JAMES W. WHITE AND SHIRLEY G. WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 28820-85.
United States Tax Court
T.C. Memo 1987-251; 1987 Tax Ct. Memo LEXIS 251; 53 T.C.M. (CCH) 842; T.C.M. (RIA) 87251; May 14, 1987. James W. White, pro se. Steven W. LaBounty, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1981 Federal income tax and additions to tax as follows: Additions to Tax Under
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6659
$36,778.77
$1,838.94 *
$11,001.49
After concessions, the issues that we must decide are: 1. Whether petitioners are *253 entitled to deduct rent paid for a master recording entitled "Little House in the Big Woods." 2. Whether petitioners are entitled to deduct depreciation from 30 master recordings. 3. Whether petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2). 4. Whether petitioners are liable for an addition to tax under section 6659. 5. Whether petitioners are subject to interest at a rate determined under section 6621(c) on the portion of their deficiency attributable to tax motivated transactions. 6. Whether petitioner is liable for self-employment tax under section 1401 in excess of the amount reported. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, husband and wife, were residents of Glencoe, Missouri, when they filed their petition herein. They filed a joint Federal income tax return for 1981. Petitioner James W. White ("petitioner") is an accountant. He operated an accounting and tax service, and he began selling what he referred to as tax shelters to clients of the service in 1979. In 1981, he personally *254 obtained the two tax shelters at issue in this case. Both of the tax shelters involved masters of records for children. Little House in the Big Woods
The first tax shelter was a master of a recording entitled "Little House in the Big Woods" ("Little House"). In July 1981, petitioner leased the rights to the master for eight years. Sales material represented that the lease entitled petitioner to claim an $18,000 investment tax credit. Petitioners did not claim the $18,000 credit in 1981 because the other items that they reported on their return reduced their tax liability to zero. A total of $8,500 rent was due under the lease. The lease required petitioner to pay a lease fee of 40 cents for each copy of the master. [2] Petitioners deducted $2,321 of rent payments in 1981. The lessor of Little House recommended a distributor to petitioners. Petitioners paid the distributor $1,500 to press *255 and distribute 4,000 copies of Little House. Petitioners expected the copies to wholesale for 80 cents each. Some copies of Little House were pressed and distributed. The copies were packaged in plain generic record sleeves that contained no explanation of the content of the record. Thirty Master Recordings
In 1981, following his rental of Little House, petitioner agreed to distribute master recordings of other records for children. Petitioner purchased 30 of the master recordings in 1981. Petitioners claimed a $600,000 basis in the 30 masters and reported a $90,000 ACRS deduction from the masters on their 1981 return. Petitioner contracted with a distributor to press and distribute copies of the 30 master recordings. The distribution agreement required petitioner to pay a base fee of $500 per master for 1400 copies of each of the masters. The agreement entitled the distributor to an additional fee of 10 percent of the wholesale price at which the copies were sold. Petitioner was also liable to reimburse the distributor for costs of manufacturing the copies, royalties due from the use of the recordings, the costs incurred in promoting and advertising the recordings, *256 and the freight and shipping costs incurred in distributing the recordings, to the extent the total of those amounts exceeded the $500 base fee. Although petitioner paid $7,500 of the amount due under the distribution agreement, no copies of the 30 master recordings were ever made. The $7,500 was returned to petitioner in early 1983. Petitioner's Background and Investigation
Petitioner had no expertise or experience in the record industry before obtaining the master recordings. He did not know the titles of the 30 master recordings before he purchased them, did not know who the artists who performed them were, and did not know the quality of the recordings. As of the time of trial, petitioner had still never listened to them. Despite his lack of expertise, he failed to obtain an independent appraisal of either Little House or the 30 master recordings. Petitioner was never informed of the results the companies he chose to distribute the recordings had achieved distributing other recordings. Petitioner did not insure the 30 master recordings, stored them at his home, and has lost two of them. He transported them to a meeting with respondent in the trunk of his car on *257 a warm July day. Respondent's Audit
Respondent audited petitioners' 1981 return and, inter alia, disallowed the deduction of $2,321 of rent for Little House, $90,000 of depreciation claimed on the 30 master recordings, and $221 of losses claimed from two small business corporations. [3] Respondent determined that the deficiency attributable to the $90,000 depreciation deduction was subject to the addition to tax provided by section 6659 and that the deficiency attributable to the $2,321 of rent, $90,000 of depreciation, and $221 of losses from the small business corporations was subject to interest at the rate provided by section 6621(d). [4] We find that the total deficiency attributable to those transactions exceeds $1,000. Respondent also determined that the entire deficiency was subject to the additions to tax provided by sections 6653(a)(1) and 6653(a)(2). OPINION Rental and Depreciation Expenses
*258 In his notice of deficiency, respondent disallowed petitioners' deduction of $2,321 reported as rental expense for Little House, and the $90,000 reported as depreciation of the 30 master recordings. One of the grounds on which respondent disallowed the rental and depreciation expenses was that petitioners' primary motive for engaging in the transactions was for tax benefits rather than for profit. Respondent's determination in his notice of deficiency is presumptively correct, and the burden of proving that it is incorrect rests on petitioners. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). As we discuss in more detail below, we hold that petitioners have not met their burden of proving that they engaged in the transactions for profit. [5]
*259 To be entitled to deduct the $2,321 rental expense and $90,000 of depreciation they reported in 1981, petitioners must show that such expenses were incurred in an activity that constitutes a trade or business or that they were incurred for the production of income. Secs. 162, 212; Flowers v. Commissioner,80 T.C. 914, 931 (1983). To constitute a trade or business an activity must be engaged in with the intent to earn a profit. Commissioner v. Groetzinger,480 U.S.    , 107 S. Ct. 980, 987 (1987). To be deductible as an expense incurred for the production of income an expense must similarly be incurred in an activity engaged in for profit rather than simply to produce tax deductions. Brown v. Commissioner,85 T.C. 968, 1000 (1985). Whether there is an intention to earn a profit is a factual issue to be resolved on the basis of all the surrounding facts and circumstances. Finoli v. Commissioner,86 T.C. 697, 722 (1986). The courts have use words such as "basic," "dominant," "primary," "predominant," and "substantial" *260 to describe the requisite profit objective. Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981). Although a reasonable expectation of profit is unnecessary, petitioners' profit objective must be bona fide. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). Greater weight is to be given to objective facts than to petitioners' after-the-fact statements of their intent. Thomas v. Commissioner,84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors to consider in determining whether an activity is engaged in for profit. [6] The factors are as follows: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended in carrying on the activity; (4) the expectation that the assets used in the activity might appreciate in value; (5) the success *261 of the activity and of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, if any, that were earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. All the factors do not necessarily apply in every case, and a careful review of the facts and circumstances of each case remains the primary test. Gefen v. Commissioner,87 T.C. 1471, 1497 (1986); Abramson v. Commissioner,86 T.C. 360, 371 (1986). *262 From a close and thorough examination of the entire record, we are satisfied that petitioners have not proven that they obtained the master recordings with a profit objective. It instead appears that they obtained the master recordings primarily to obtain tax deductions and credits. A number of the factors that we consider significant in our analysis are discussed below. The manner in which petitioners carried on the activities belies their assertion that their primary intent was to earn a profit. Petitioner, an individual who admitted that he had no experience or expertise in the record industry, testified that he contracted to invest over $600,000 in master recordings after making only a minimal investigation of the sellers, without having the recordings appraised, and without even knowing the specific recordings he was purchasing. Although the number of copies of the recordings that could be sold was crucial to petitioners' ability to earn an economic profit, they were never informed of the results the companies that they employed to distribute their recordings had achieved distributing similar recordings. It is inconceivable to us that an investor with petitioner's level *263 of sophistication would enter such a large transaction after such a slight investigation if his motive were to earn a profit. Petitioner testified that he carried no insurance on the recordings, stored them at home, and lost two of them. He also testified that he transported the masters in the trunk of his car on a warm July day. We consider petitioner's disregard for the physical security of the master recordings to be inconsistent with a profit objective. The amount petitioner paid for the recordings also indicates the lack of a profit motive. Petitioner contracted to pay $8,500 to rent Little House for five years, and $600,000 to purchase the 30 other master recordings. Respondent's expert, John Wiedenmann, appraised Little House and 25 of the 30 other recordings and valued them at $500 each. Wiedenmann, an expert with over 25 years of experience in the record industry, listened to Little House and 25 of the other master recordings, and testified concerning their quality, salability, and value. He testified that the recordings consisted of unknown artists reading undistinguished stories accompanied by a solo instrument providing background music. He stated that they were *264 crudely made, and could well have been recorded 30 to 40 years ago. In his opinion, copies of the masters would be very difficult to sell and, if they could be sold, would have profit margins of only pennies a copy. He testified that petitioners could hope to sell at most 10,000 to 20,000 copies of each of the recordings. Petitioner presented no evidence of the fair market value of the master recordings. After considering the evidence, we hold that the recordings had a fair market value in 1981 of only $500 each, and that the amounts petitioner contracted to pay for them indicate that he lacked a profit motive. Petitioner's willingness to enter an industry he had no experience or expertise in, pay grossly inflated prices for crudely made master recordings, and disregard the physical security of the recordings, becomes understandable when the tax benefits he expected to obtain from the recordings are examined. Petitioner expected his lease of Little House to entitle him to an $18,000 tax credit. That credit alone would more than compensate for the entire $8,500 of rent petitioner was obligated to pay under the lease. Petitioner expected his purchase of the 30 master recordings *265 to yield similar tax benefits. He expected to claim $600,000 of ACRS deductions over the first five years he owned the recordings. Although those deductions would yield immediate tax savings, he testified that he was not required to pay the $600,000 until the fourteenth year after he obtained the recordings. The tax benefits petitioner expected the recordings to generate negated any need for him to earn an economic profit from the recordings. In sum, we hold that petitioners have failed to establish that they obtained the master recordings with a profit objective so as to be entitled to deduct the rent and depreciation expenses at issue. Additions for Negligence
Respondent determined that petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2) for negligence for 1981. Respondent determined that petitioners' entire deficiency was due to negligence for purposes of the section 6653(a)(2) addition. Petitioners assert that they are not liable for those additions. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment is due to negligence *266 or intentional disregard of rules and regulations. Petitioners bear the burden of proving that the additions determined in respondent's notice of deficiency do not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Negligence under section 6653(a)(1) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners have not proven that they took reasonable steps to determine that they were entitled to the deductions they claimed. [7] As an accountant who ran an accounting and tax service and marketed tax shelters, petitioner should have been well aware that he was prohibited from deducting rent and depreciation expenses for an activity not engaged in for profit. Considering all of the evidence before us, we hold that petitioners have failed to prove that respondent erroneously determined that they are subject to the addition to tax under *267 section 6653(a)(1) for 1981. For these same reasons we conclude further that petitioners have failed to prove that respondent's determination that their entire deficiency was due to negligence for purposes of the section 6653(a)(2) addition was erroneous. We therefore sustain respondent's determination that petitioners are liable for the addition to tax pursuant to section 6653(a)(2) on their entire deficiency. Section 6659
Section 6659 provides, as is relevant here, for an addition to tax on underpayments attributable to valuation overstatements. Section 6659(c) defines valuation overstatement to include, inter alia, the claim on a return of an adjusted basis of 150 percent or more of the correct adjusted basis. When the adjusted basis claimed is more than 250 percent of the correct adjusted basis, the addition to tax is 30 percent of the underpayment attributable to the valuation overstatement. Sec. 6659(b). Respondent determined in his notice of deficiency *268 that the entire $90,000 depreciation deduction claimed on the 30 master recordings was attributable to a valuation overstatement. We agree. Petitioners claimed a $600,000 basis in the 30 master recordings. The only evidence that petitioners are entitled to any basis in the recordings is petitioner's totally uncorroborated testimony that he paid $20,000 in the form of recourse notes bearing nine percent annual interest for each of the recordings. Petitioner admitted that he had not yet paid any cash for the recordings as of the time of trial. According to petitioner, no payments were due on the notes for 14 years from the date he obtained the recordings. Petitioners' failure to introduce into evidence details of the terms of the debt prevents us from determining whether the debt is properly includable in the basis of the recordings. [8] In sum, we hold that petitioners have failed to satisfy their burden of proving that their basis in the recordings includes $600,000 of debt. *269 After excluding the $600,000 debt from the basis of the 30 master recordings, their cost basis is $0. Petitioners have the burden of proving that they are not liable for the addition to tax under section 6659 as it was determined by respondent in his notice of deficiency. Welch v. Helvering,supra; Rule 142(a). After carefully considering the evidence before us, we hold that they have failed to do so. Section 6621(c)
Respondent determined in his notice of deficiency that the portion of the deficiency attributable to the $2,321 of rent, $90,000 of depreciation, and $221 of losses from small business corporations claimed by petitioners was subject to interest at the rate determined under section 6621(c). Section 6621(c) provides for a rate of interest on deficiencies attributable to tax motivated transactions of 120 percent of the underpayment rate established under section 6621. The rate applies to interest accruing after December 31, 1984, even if the tax motivated transaction occurred prior to that date. Solowiejczyk v. Commissioner,85 T.C. 552, 555-556 (1985), *270 affd. without published opinion 795 F.2d 1005 (2d Cir. 1986); sec. 301.6621-2T, Q-10 and A-10, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50393 (Dec. 28, 1984). To be subject to the rate, the aggregate deficiency for a year attributable to all tax motivated transactions must exceed $1,000. Sec. 6621(c)(2). Tax motivated transactions include, inter alia, valuation overstatements and deductions disallowed from activities not engaged in for profit. Sec. 6621(c)(3); sec. 301.6621-2T, Q-4 and A-4, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50393 (Dec. 28, 1984). As respondent determined in his notice of deficiency the portion of the deficiency that was from tax motivated transactions, petitioners bear the burden of proving otherwise. Welch v. Helvering,supra; Rule 142(a). For the following reasons, we conclude that petitioners have failed to satisfy their burden of proof. First, petitioners have failed to establish that respondent improperly characterized the transactions in issue as tax motivated transactions. We have already upheld respondent's disallowance of petitioners' claimed $2,321 rent expense *271 and $90,000 depreciation deduction on the grounds that petitioners failed to prove they were incurred in activities engaged in for profit. As we have discussed, deductions disallowed from activities not engaged in for profit are tax motivated transactions. [9] Second, petitioners have introduced no evidence to establish that the disallowed $221 loss from small business corporations was not from tax motivated transactions. We have found that the total deficiency attributable to those transactions exceeded $1,000, which qualifies it as a substantial underpayment. We accordingly uphold respondent's determination that the rate of interest determined under section 6621(c) applies as he determined. Self-Employment Tax
Based on the adjustments to petitioner's income determined in his notice of deficiency, respondent determined that petitioner was liable for additional tax under section 1401. Section 1401 imposes a tax on net earnings from self-employment income, defined as gross income derived from carrying on *272 a trade or business, less allowable deductions. Petitioner reported substantial income from his accounting and tax service, and from sales. That income appears to be subject to self-employment tax. Petitioner failed to present any evidence whatsoever regarding this matter. As petitioners had the burden of proof on this issue, and have failed to meet their burden, we sustain respondent. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on an underpayment of $36,778.77.↩
2. No copy of the lease was introduced into evidence and it is unclear from the record whether the 40 cents per copy was to be applied toward, or was instead in addition to, the $8,500 rent. It is also unclear whether the 40 cents was due for all copies made, or just copies sold.↩
3. Petitioners have conceded that they are not entitled to the $221 of losses claimed from the two small business corporations. ↩
4. Sec. 6621(d) was redesignated as sec. 6621(c)↩ by sec. 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750.
5. We recently held in Rose v. Commissioner, 88 T.C.     (Feb. 5, 1987), that in the case of "generic tax shelters" it is preferable to merge section 183's subjective test for profit motive into an objective test that focuses on whether objective factors indicate that the generic tax shelter had economic substance. In Rose, we defined "generic tax shelter" as a program involving the following five characteristics: (1) Tax benefits were the focus of promotional materials; (2) the investors accepted the terms of purchase without price negotiation; (3) the assets in question consist of packages of purported rights, difficult to value in the abstract and substantially overvalued in relation to tangible property included as part of the package; (4) the tangible assets were acquired or created at a relatively small cost shortly prior to the transactions in question; and (5) the bulk of the consideration was deferred by promissory notes, nonrecourse in form or in substance. 88 T.C. at     (slip opinion at p. 40). This case was tried and briefed by the parties in terms of a profit objective under the factors set forth in sec. 1.183-2(b), Income Tax Regs., prior to our opinion in Rose.↩ We therefore base our analysis on those factors.
6. Sec. 183, which allows the deduction of certain expenses incurred in activities not engaged in for profit, does not apply to allow the deduction of any expenses in this case. Sec. 183 allows the deduction of expenses that are not deductible in the absence of a profit motive only to the extent that receipts from an activity exceed the total of expenses deductible regardless of whether the activity is entered into with a profit motive. Neither the rental nor depreciation expenses are deductible without a profit motive, and petitioners reported no receipts from their master recording activities in 1981. We may nevertheless use the factors set forth in sec. 183 and the regulations thereunder to determine whether the activities were engaged in for profit. Brannen v. Commissioner,722 F.2d 695, 704↩ (11th Cir. 1984).
7. Petitioners failed to present evidence that they were not negligent with regard to the adjustments they conceded.↩
8. We consider it significant that petitioner failed to introduce any documentary evidence of the terms of the debt. We do not view petitioner's failure as a mere oversight by a pro se litigant. During the trial, the Court reminded petitioner of the small amount of documentary evidence that had been introduced, and prompted him to introduce more. We infer from his failure that documentary evidence would not have supported his testimony. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).
9. The $90,000 depreciation deduction also qualifies as a tax motivated transaction on the alternative ground that it is attributable to a valuation overstatement.↩